The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 20-1414 HV West v. United States. Mr. Major, whenever you're ready. Thank you, Your Honor. May it please the Court. Pursuant to 28 U.S.C. 1491b1, the United States Court of Federal Claims only possesses bid protest jurisdiction to review the word of a contract in connection with a procurement or a proposed procurement. As a waiver of sovereign immunity, this grant of jurisdiction is to be strictly construed. Mr. Major, this is Sharon Prost. What is the standard, in your view, as to how we are to ascertain the true nature of this contract? I mean, that word is like central to the transaction, more than de minimis, mixed transaction. What is your view of the standard to be applied? Well, first, Your Honor, more than de minimis or the mixed transaction, none of that occurs anywhere in the United States Code. That is simply a constructed sort of way of attempting to determine that a particular matter is a procurement, even where it is here, it is a sale. But I think from the government's perspective, there are a few central core principles. First, that Congress, throughout its statutes, has distinguished between sales, procurements, and the use of government property also. But in the statutory regime, the words that Congress has used in the past in talking about transactions is talking about the principal purpose. And that goes to the essential nature, the character of the transaction itself, and looks to things as, you know, as the court noted in Hymus, you know, whether property has been acquired for the direct use or benefit of the government. So in a case like this, where the government is selling property, if there are conditions on the sale, and those conditions on the sale are not for the direct use and benefit of the government, but are in furtherance of the disposition of the property, then that transaction would not qualify as a procurement, would qualify as a sale. And in most cases... So your view of what the standard is, is we would have to conclude that the principal purpose of the parties entering in this transaction was to get all of this hardware from the military, whatever it was, decomposed, or... Yes, it was a sale of property. And the government could simply, it could enter into procurement and simply dispose of the property without a sale. It could, you know, enter into... There are a number of ways the government could go forward in a transaction. In this particular instance, the government chose to proceed by a sale, applying the strictures of the federal management regulations, rather than the federal acquisition regulations. Well, Mr. Maynard, let me tell you what's... This is Judge Prociet. I'm sorry to interrupt, but our time is obviously short. What's bothering me about this is, I don't know, coming from the Watergate days, you have to follow the money. And when you look at the numbers associated with the sale and the procurement, tell me if I'm misunderstanding them. But from what I understand in the record, it was almost $2 a pound for the scrap metal. And the contract bid, the highest one, was just a few cents, which suggests to me that if you're just looking at where the numbers were and where the bulk of the money that affected were, it was really not in the sale. The huge bulk of the amount of money from... We're going down from $1.96 of scrap metals, $1.96, to just a few pennies, right? Doesn't that suggest anything? Should that not suggest anything to us about what the real purpose of this transaction was? Well, but I think what should be more suggestive to the court is the simple fact that at the end of the day, there is still a contractor who is paying the government, not the government paying the contractor. So the overall value of the transaction, if you have to look at it from the contractor's perspective and from the government's perspective, that particular scrap is more valuable to them than any potential pertinent demilitarization or mutilation that they might have to provide. And the court actually didn't... I mean, in saying... In applying its test, the trial court didn't actually try to weigh the amount that was paid relative to the value of the service to the government. The court simply skipped past that by saying, well, it's of a more than de minimis value. Mr. Mager, this is Judge Huth. Can I interrupt here just a minute? I have a hypothetical for you here. Instead of having just this one sale, as you like to call it, suppose the government had a block of this equipment that it wanted to decommission and sell, and it knew that it had to decommission it. What if it had gone out with two contracts, one for decommissioning, and then once it was decommissioning, sold it? Would not that first decommissioning contract where they pay somebody a decommission be a procurement? Yes. I mean, the structure of the transaction that the government engages in does impact whether the court of federal claims has jurisdiction over it, just as the rules that would apply to those particular transactions would vary. So say that I'm going to just use very basic numbers to get my point across, but say the decommissioning services cost $1 million. And that's a procurement. And then once it's decommissioned, it's worth a little bit of scrap metal, but not much. So they can sell it for whatever the highest bid is, but they know the highest bid is going to come in around $100,000. And that's clearly a sale. What if the government decides it's more convenient to do both of these things at once? And so you have, again, a dual-purpose contract where you're getting services that are worth a lot of money, but they're willing to pay a little bit of money for it. Now, I know my numbers are not going to work for this contract, but I think the idea is there, whereas the contractor is getting some profit out of it, but the government is getting a whole lot of service out of it too. How do we determine then if there are two equal... Well, we don't even have to say they're equal. If there are two important purposes, how do we determine whether it's a procurement or a sale? Well, I mean, you're, again, looking to, is the government acquiring those services for the use and benefit? I mean, I'll say, in your example, whether it is... Well, sure, but can I interrupt, Mr. Major and Judge Clevenger? Why can't you just answer the question? Let's assume that the services are for the benefit of the government. What we're trying to find out, all three of us, is what's the test for deciding a true mixed contract, whether there is or is not protest jurisdiction? Assume, for purposes of argument, a genuine, pure, mixed contract, no question about it. The government is both selling property and it's getting services for its benefit. How do we decide? Is there jurisdiction? Is there possibly jurisdiction over that contract? Yes or no? I'm sorry, because that's rather involved. But, I mean, the court, again, if the principal purpose is to... Well, is your answer that we have to determine what the principal purpose is? If the principal purpose of a mixed contract is sale, then you would say no jurisdiction. But is the principal purpose the test? Yes. What if there are two principal purposes? What if there are co-equal principal purposes? Well, I don't know that we want to get into parsing of, well, this is... I mean, how will we determine that? If the government wants a contract that gives services for the government, but also gets some money for the government from sales, how do we determine whether there's jurisdiction or not? Let's just assume, because it seems a little simplistic to say, well, there can only be one principal purpose. Lots of contracts can have multiple purposes. Are we looking at quantifying it, which is higher dollar value for bid protest jurisdiction? Or are we just looking at whether there's some aspect of the contract that has a procurement aspect? Your Honor, I'm into my rebuttal time, but if it's principal purpose, you can't have two principal purposes. That wording itself says there's going to be one principal purpose. But, I mean, consistent with Hymus, you look at... Well, how do you measure principal purpose? Is it by the importance to the government? Yes. I mean, is the government... Okay, so let's assume the government says both are important to me, equally important. Well, an easy way in the context of a sale is who is paying who? Is the contractor paying the government, or is the government paying the contractor? Because in those scenarios, clearly the principal purpose would be that... You make the case easy. Why don't you make the case hard and say the government is paying the contractor? Well, if the government is paying the contractor, then that would be a procurement. Absolutely. I don't disagree that if the government is paying the contractor, that's a procurement. See, you're running away from the problem, sir, with all due respect. Let's assume a genuine mixed contract where the services are for the benefit of the government. But it's also a sale. And both purposes are equally important to the government. It's a record. They say it's equally important to decommission as it is to get rid of the stuff. How do we decide that? That one's also easier, Your Honor, because waivers of sovereign immunity are to be strictly construed. So in that instance, if we're talking truly 50-50%, then it would not qualify as a procurement and the court would not have jurisdiction over it. That answer does not seem to make any sense whatsoever. I mean, there is a waiver. You seem to be relying on the notion that a contract has to be all one thing or all another thing. But I don't see anything, any logical reason that that's true. It seems to me that a contract can have multiple purposes. Let me ask you. I know you're well past your time. I'm going to ask you one last hypothetical, though, if the Chief will indulge me. Let's say the most important thing for the government is getting the decommissioning done. But it realizes it can have somebody do it essentially for free and even get a little bit back because the scrap metal is worth something. So it structures that contract in that way, even though it would have been happy to pay to have it done. Why should we rely on a formalistic view of whether that government is getting money back to determine what the principal purpose is rather than the actual underlying purpose? Well, Your Honor, because quite simply in those scenarios, we have a specific set of rules that are going to be applied to that transaction, federal acquisition regulations or the federal management regulations, how the government has chosen to structure that will affect whether the court has jurisdiction over it. I mean, we're talking about some sort of almost, you know, purpose that's deep, you know, within the government. You know, the government has a deep concern about something, but that itself is insufficient to say that it is not a sale, even if the government has a strong interest in something. I mean, again, that doesn't turn a sale into a procurement. And so if the government uses the sale regulations rather than the procurement regulations, the government is the one that gets to dictate whether it's a sale or a procurement. And therefore, the Court of Federal Claims did protest jurisdiction. Yes, because and also at the end of the day, if the value of that property is so great and the value of those services as determined by the market is so great, we won't have any contractors bidding on the sale. You know, if it's going to cost them more to dispose of or demilitarize the property in a case like this, then it would for them, then the value of the scrap would be. So economics helps control and constrain the government in those instances. You can't turn a procurement into a sale, again, unless the principal purpose is something where the government is and you can look at how the parties have, are acting with regards to that transaction. Okay. Why don't we move on to your colleague? He's reserved four minutes and we'll give him his four minutes. Good morning. Thank you, Your Honor. This is Sharbha Mani on behalf of Appellant Land Depollution Incorporated. Can everybody hear me fine on that end? Yes. Yes. It's Judge Klobuchar. Let me just ask one technical question before you start. At page 21 of your reply brief, you cite provision of the contract provides for the facilities on subcontractors to use, and your site is administrative record 313, paragraph one point, at one point. That's not in the appendix. Would you please supply that to us later today? Yes, Your Honor. I would be more than happy to do so. Your Honor, Mr. Mayer and the court spent a great deal of time talking about the jurisdiction issue, which is also a basis for my client, Lamb Depollution's appeal. If it pleases the court, rather than spend my limited time going over that topic again, I want to address one of the two remaining basis for Lamb's appeal, which is the third to cancel the contract of the bid solicitation that was awarded to Lamb. I'm happy to answer any questions that the court might have as to the first basis regarding jurisdiction or as to the second basis regarding standing. But again, due to my limited time, I'd rather just spend the next three to four minutes talking about the third basis of appeal again. Well, I appreciate that you recognize it's our time and not yours. So let me ask you to talk about standing a little bit. Your argument, I guess, is that they fell short with respect to saying something about the other two contractors. Well, if we're talking about the complaint, it's pre-discovery. How much did they have to say to set that would have satisfied the standing requirement? They wouldn't have had to prove that the other contractors were incapable of performing, right? Do they have to say they're incapable of performing? How much needs to be said? Right, Your Honor. And to adequately... Great question. And to adequately answer that question, I go back to the initial rule that we're looking at, which is that any protester in a bid protest needs to show that they had a substantial chance of receiving the contract. And I guess that depends on the circumstances, depending on how the particular bid solicitation is set up. In this case, the way the bid solicitation was set up is that it asked for a two-step evaluation process, where in the first step, the only information that was requested to perform a comparative basis of evaluation was the bid price. In the second step, after determining who the apparent high bidder was based on that high bid price, the agency then engaged in an evaluation only as to that apparent high bid price, the rest of the qualifications, the rest of the criteria set forth in the award. So, in this case, what happened was that my client, Liam D. Pollution, finished as the highest bidder based on bid price. I know, so they're off the table. We know the numbers are 1, 2, 3, and 4. So, how does one establish... What's the least one could do to bid number... Bidder number 4 to establish that he would have had a substantial chance? Right. So, in bidder number 4's case, bidder number 4 would have had to establish that bidder number 1 could not have qualified based on all of the criteria set forth in the award. In addition, bidder number 2 couldn't have qualified based on all 10 of the criteria set forth in the award. And then, even if bidder number 2 failed, then bidder number 3 also could not qualify based on all the criteria set forth in the award. Well, if he could have proven up that they didn't qualify, then it would be more than a substantial chance. Then he would have proven that he would have gotten the contract, and the standard is a substantial chance, not that he was 100% sure of winning. So, I'm trying to see where the lines are drawn here and how much you really have to put forth in your complaint to establish a substantial chance. You don't have to show you would have won, right? Correct, correct. Say these guys absolutely would have been knocked out of the park on two, because one has already settled the first criteria of the amount. So, what does he have to say? What does he have to show? In this case, he, HBF, would have had to point to a specific criteria that it considered that these bidders would not have been able to show. But in this case, that's not what happened in the complaint. Rather, there were one to two very sparse allegations in the complaint based on websites of the intervening bidders claiming that, because these websites don't show that these bidders have enough expertise or have- I'm sure. I apologize for interrupting, but- No, not at all, Your Honor. Show that they wouldn't know? I mean, it's not, he doesn't have to prove 100%. He just has to prove substantial chance. I'm just trying to honestly understand what substantial chance means. So, wouldn't it have been sufficient if he could say there were questions about their capacity to perform? And therefore, it's likely they wouldn't have been able to do it? He doesn't have to show that they couldn't possibly have done it, right? Yeah, I don't think it goes- and I agree with you. I don't think what we're asking is for 100%. You have to show 100% that they couldn't perform. At the same time, you need to do more than just say that these guys have very little experience based on their website, and based on that, we think this should serve as a barrier to entry and essentially create a monopoly for us who do have a certain amount of experience. And let's keep out anybody else who thinks they're an upstart and who thinks they have- What if, hypothetically, the solicitation had ranked experience as the most important factor? That would change it, but it didn't. That would change it. Absolutely, Your Honor. I think if experience was the most important factor here, I think we're looking at a different ballgame, but in this case, it wasn't. Price was the most important factor, frankly. And then after price, then it was the 10 other criteria used for the award, all of which were given equal weight. Price and experience are in different buckets. Price is one thing, but experience goes to your technical capacity, your demonstrated technical capacity to perform a contract, right? Agreed, Your Honor, and that's exactly what happened here is that experience and financial wherewithal and some of the other criteria used, the agency in this case wasn't looking for the ones who had the most experience in all of the United States or the ones who had the most financial resources in the United States. All of those factors with respect to this bid solicitation were all just bare minimum requirements, just that we want to make sure that you as the highest price bidder, you have the ability to perform on the contract. So, we're not engaging in a comparative analysis. So, I'm sorry, but how better can one show that they have the capacity to do this than showing that they have substantial experience in doing it? Experience is certainly one factor that's important, but at the same time too, and I think the reason why experience wasn't the only factor is that the agency didn't want to create a barrier to entry for companies such as my client, who frankly didn't have the experience in Arizona, but did have the experience in Texas working on a similar project with the agency. So, they didn't want to create a barrier to entry just based on experience alone. And if that's the only allegation that's coming from HVF in their complaint that, look, the second and third place bidders don't have the requisite experience just based on our review of a website, I respectfully submit that that's not enough for standing to allege that they had a substantial chance that these bidders would have failed. All right. Thank you. I think I heard the bell. Sorry, you didn't get to the point you wanted to cover. No problem at all, Your Honor. Thank you. Okay. Let's hear from Mr. Ho.  Thank you, Your Honor, and may it please the court. I think there are clearly two areas that the court is interested in, so I will address each one of those in turn. The first question being what standard to apply to a transaction, I'll call it for the both a procurement and a sale. And I think it's probably not useful use of time here to go into all the reasons why I think there was a procurement here of very important services. Well, yours is not just because it's mixed. It is necessarily jurisdiction. It has to do with at least the quantification or the qualification of what's really been going on here. So just saying it includes services and money isn't enough in your view, is it? Or is it? No, it isn't, Your Honor, and it begs the question that the court has raised here as to what standard to apply. Judge Sweeney in her decision looked at for guidance a GAO decision that resolved the question using a more than de minimis standard to identify a procurement. Judge Horne, when we did supply this per decision separately, there was a subsequent bid protest involving essentially the same solicitation language that Judge Horne had before her. And she looked at the same, essentially the same language. And she said, for this particular procurement, it either meets a de minimis standard or a principal purpose standard. And she adopted the principal purpose standard from some of your decisions, from the Federal Circuit decisions. Those decisions, however, largely, if not entirely, the principal purpose test came from statutes that underlay the question. So, for example, the Hymas case involved the Service Contract Act. And the question was whether it was a service contract or a procurement contract for goods. Are you embracing the standard of principal purpose? I would stick with, I think the de minimis standard is a good standard. I will acknowledge that there is no, in my review, there is no Federal Circuit decision on what the standard should be. There is no statute either. Excuse me. Let's assume, hypothetically, the standard were the principal purpose. Certainly. Do you see that here? Absolutely, Your Honor. This, first of all, the solicitation has all the indicia of the procurement of services, has detailed specifications on how the work will be performed. The solicitation talks in terms of the work to be performed. It also has an evaluation scheme. But all the documents seem to be called sales contracts. There is a lot of, the word sale is used repeatedly in all of the contractual documents that we have here. Well, Your Honor, if you will, a slight, it's not a euphemism, I'm not sure what the term is, but we began to look at this, if it walks like a duck and quacks like a duck, it's a duck. The procurement is, or the transaction is what it is. Whatever title you give it doesn't change the underlying nature of the procurement or of the transaction. And as I said, there, yes. Excuse me, Mr. Hodge. Judge Clevenger, if we were to decide that principal purpose is the guiding principle for deciding what kind of contract this is, why shouldn't we just vacate and remand? I mean, if it, whether it's a duck or not a duck sounds like a question that you need to have testimony on. Well, I think Judge Sweeney did look at the full record and made that judgment. She looked at it and said- But not as a matter of principal purpose. That is true. I think you can take- If we have a new test, why don't we vacate and remand? Well, I believe in, just in terms of judicial efficiency, Judge Horn basically decided the same case. I realized it was not this case that's before you, but it was essentially the same. In fact, in all particular purposes, it was the same procurement. And in her view, it was both a principal purpose and a more than de minimis case that was met by this solicitation. So I guess technically one could remand, but I think the court could take notice that that issue was decided by another judge at the Court of Federal Claims within months of the first decision. And she applied the principal purpose test and it passed. So that test as well. Doesn't the fact that the selection is structured, number one, whoever gives us the most money, that's the way we rank people. And after that, it's only secondary. You can obviously have the capacity to do the job. But doesn't that fact that the selection was really based on who was giving up the most money in terms of purchasing this, an indicative fact for us to conclude that this was predominantly for purposes of the sale? Well, I don't think it answers the question, Your Honor. And I know there's been focus on that point. But just put yourself, I will suggest we put ourselves in the shoes of the bidders. And they have at least two factors to consider. One is, what are they going to pay for the resulting scrap? And what is their cost of doing the demilitarization and mutilation of this property? And they factor those two items together and they offer a price. And I think Your Honor made the point earlier that the value of this property before it was turned into scrap was substantial. And the amount that the contractor was actually willing to pay was quite small, relatively speaking. Now, I don't want to suggest that all of that delta is the cost that the contractor incurs in actually demilitarizing and utilizing this material. But there's a large factor there. These companies have to have facilities. They have to have equipment. They have labor. They have overhead. They need to earn a profit. I don't think the dollar, you know, just looking at the dollar really answers the question. I think there is more to it than that. And I... I can talk about the argument, which is, if it's more than that, why have you adequately alleged sufficient facts to establish that you had a substantial chance to have your bid accepted over the other three who were better priced?  Thank you, Your Honor. So, first of all, we alleged two factual bases in our complaint. So, on the face of the complaint, we allege two bases. One has been mentioned, and I realize counsel believes the solicitation called only for a price comparison followed by some administrative tasks. That's not what the, at least the face of the solicitation said. It said, we will award multiple contracts, by the way. We reserve the right to award multiple contracts. We will select the most advantageous offerors or offeror or offerors, and we will consider price and other factors. So, on that basis, we alleged we had standing, you know, because price was not the only factor. We also alleged in paragraph 88 of our complaint that the other two intervening parties just direct challenge did not meet the solicitation requirements, and therefore, were not qualified for the award. Now, you know, we subsequently amended that, or I shouldn't say amended that. We subsequently added facts to that once the administrative record was supplied, and were able to demonstrate further that they were not qualified. But on the face of this list of the, excuse me, the complaint, I believe we stated facts, and I would say also that HBF was. This is Judge Crouch. He said that you demonstrated that they were not qualified. Well, we alleged. Can you cite in the appendix to your death? I'm sorry. You were broken up a little bit, Your Honor. Could you cite the page in the appendix of your protest? You're talking about what you said? Yes. And what page is the protest in the appendix, please? Well, the complaint is, I can give you the page in the complaint. It's appendix 59, page 59, paragraph 88, and I will quickly read it. On information and belief, the bids of the two intervenors would have similarly failed to meet the standards for a successful pre-award survey. Not that they wouldn't have, you know, been entitled to the award, but we focused on the- Yes, I think paragraph 88, that's for your facial argument, yes. That's correct, and I would add to that, Your Honor, that indirectly, if you will, we have a number of allegations in the complaint of HVS status as the incumbent and as a party that has been in the industry, which gave it a basis, which is very typical in bid protests, where all you have is a debriefing, at best, to go on, but gave us a basis to say, we know the industry, we have reason to believe that these people, these two names are not going to be qualified. So that met our, in our view, our facial obligation with respect to the standing. And of course, once again, once we got into the actual facts, was there factual standing? Judge Sweeney found yes, that the evidence that we produced after the record was open was indicative that these two parties were not necessarily going to be winners, to make Judge Prost's point. The question was not whether they would win or not win, but whether they were suspect, which would give HVS the opportunity to have a substantial chance for the award. And this is Judge Hughes, what specifically in the record, once you got the record, made these two middle bidders suspect? So the history, Your Honor, kind of interesting. The government, when it announced the bids and its selection of the winner, named names, individual names. And so there were four names. Of course, HVS knew who it was. The other three were names. HVS sought to learn more about each of those names to assess whether they had a basis to protest. And went to the government and said, give me a little more detail. And the government said, I'm not going to, I can't, I won't. I think they checked internally, the legal department. You're not really, I'm sorry, let me interrupt because you don't have much time. You're not answering my question, giving me this long history. Once the record was filed, have the administrative record, you've suggested that it further gave you additional facts. Where in the additional record are those additional facts to show the middle bidders would not meet those technical qualifications? So what we obtained in the administrative record were the names of the companies associated with these individual names. And when we determined or learned what the names of the companies were for the first time, we did our own research. Yeah, there's no, you're still not answering Judge Hughes. He asked where in the record, in the appendix, where did we find the factual information in the appendix? It would have, I don't have the site. I can give that to you this afternoon. We did, it was information that we presented to the court that we developed. And as Judge- With all due respect, we have a short term. That's exactly what Judge Hughes was asking you for. And I would think you would have that in hand to give to us an oral argument. Well, I apologize. I will get it for you. I don't have the exact page here. But it was submitted to the court, I believe, as an attachment to one of our pleadings. And I will identify- Did you move? Is that actually part of the record? I'm just confused as to, did you ask to supplement the record with the bidder's actual information that the government wasn't giving you? We did. We did. And what happened? That's the sense. The government, or at least the LAM, objected. So that was outside the record, should not be included. Judge Sweeney considered that and said that it would not be unusual at all that the record would not contain information about these two intervening bidders because the government never evaluated them, as we said was required. So there was nothing in the record as to those two. In order for us to show prejudice and a substantial likelihood of having a chance at an award, we presented the evidence as part of our filing. And the judge accepted it and denied the government and LAM motions to exclude that evidence. So that's kind of an interesting point. In this kind of circumstance, where nothing has been done with respect to evaluating any of the bidders other than the first, are you suggesting that, therefore, you don't have to show much, if anything, for a substantial chance? No, not at all. Not at all, Your Honor. Not at all. Again, we have two prongs, facially, for standing. One is the most advantageous multiple award, other factors, consideration stance. And the other is, I think, what we're talking about now, where we did allege on information and belief that the other two were not qualified or would not pass a pre-award survey. We had knowledge, and we said that in our complaint, because we were the incumbent of who does this work and what it takes to do the work. These were total unknowns. So on that basis, we made the allegation that the other two likely were not. If they were total unknowns, how would you have any information, one way or another, when you wrote your complaint? Because our client knows the industry. They've been doing this for the government for years. Like any small industry that does government contracting, people know who the other players are, because they bid against each other all the time. What if it's a brand new company that's capable of doing it, but you've never heard of? This seems very conclusory to me to establish standing. And I'm just wondering why you didn't move to... This seems like when you say that the government hadn't evaluated these intermediary bidders, that why isn't it the case that the administrative record has a gap that has to be filled, and you should have sought additional discovery on this? Well, we thought we had sufficient information from the public record to supplement the record. And the judge accepted that additional information, the public record she cited in her opinion, as evidence that these two parties were not likely to be qualified. And so I think we did that. That's the stuff you say is in the record, but you can't cite to me right now. I can't cite it to you this exact second, but it was in our brief. We would have attached exhibits. I just don't have that immediately at hand, and I apologize for that. What about... This is Judge Clevenger. What about the ability of one of these unknown people to subcontract? Wouldn't you have to make some showing that they couldn't subcontract out to someone who could do it? Well, you could, certainly, and... Right, but I mean, just from the face of it, if the contract says, you know, it comes along, and the person that had the most attractive price and the contracting officer says, well, can you do this? And they say, no, we can't do that, but we're going to subcontract out. As a matter of fact, we're going to subcontract with HPF. Well, don't you have to show that there's no possible even way they could succeed through subcontracting? Well, again, I don't think that the standard is no possible way. Right, but I mean, subcontracting allows them to get around your problem of no experience. Well, you know, subcontracting requires the prime contractor to manage the work and even do some of the work. So, I don't think it's a total solution to say this could be subcontracted out. You don't make any avertment anywhere that numbers two and three lack the capacity to manage your contract? Well, Your Honor, I would say, you know, we were acting on some limited information, I think, plausibly taken from the public record and our company's knowledge of the industry. But I would remind or suggest that that was not the only basis on which we established facial standing. And it was the court found that we had established facial standing on the allegation that the government's evaluation criteria for multiple awards was a most advantageous non-price standard. Facial or factual? I thought you said a minute ago it was factual. Well, it became factual. Let me step back just a second. There were two grounds in which we alleged substantial likelihood of succeeding. One was that the solicitation called for an evaluation of the most advantageous proposals or proposal with an option to award multiple contracts, including non-price factors, right? So, price was not the only factor. That's the language of the solicitation. We said we believe, had the non-price factors been considered, we would have had a substantial chance of winning. We secondly said in paragraph 88 of our complaint, we believe the other two interveners are not qualified. Now, all we needed, in my view, is one of the two. I think the first one was stronger. The first one, Judge Sweeney agreed with us that that established standing. And she went on to say, as to the second, she used the second to establish prejudice. By then, she had the information that we had provided from the public record to find that these two parties were unlikely to be successful. And she said that allowed, you know, as one basis for her to decide there was prejudice to HVF from the government's failure to evaluate the proposals properly. So, both aspects are there. Our first one, I agree with you. I believe it's stronger. We were somewhat hampered in the second one, I would agree, because the government would not reveal who these people really were, or at least any more details about them. But we met the first test. Judge Sweeney found we met the first test. She used the second test to decide there was prejudice after she had the information. So, factually, once she had the information that the government never obtained, or they never looked at the other two, she looked at that information and said, you know, she agreed that we were prejudiced because the other two were, you know, unlikely to be successful. Could I just ask one final procedural question, Mr. Ho? Assume for purposes of argument, just only for purpose of argument, that we were to decide either there was no jurisdiction over the contract or that your client lacked standing. What's the effect on the bridge contract? Is it mooted out? In my view, Your Honor, it is freestanding. It was a separate procurement. Using much of the same language, I think it's freestanding. The one caveat I would say to that, Your Honor, is that the bridge... I would have thought that if we decided either that your client lacked standing or that there was no jurisdiction, that would nullify the argument, the challenge to the award of the contract to LAM, and that LAM would be holding the contract, I would think. Am I wrong? No, I think you're correct, Your Honor. The nuance here is that the bridge contract was a competition, and there's a whole history there, but ultimately LAM received that contract. Now, that solicitation was put out to say it was going to bridge the period for the government's appeal, which we're dealing with today. So, if you were to decide the original award was proper, I assume the government would cancel the bridge solicitation contract and go back to LAM. If you decide in our favor on the first contract, again, I'm not sure what the government is going to do with the bridge solicitation. I would think that because it was put out there only as a bridge during the appeal, that it would have to go away once the appeal is done. Okay. Thank you very much. Thank you. I think I heard the bell. Am I correct? Yes. Yeah. All right. Let's go back to Mr. Major, Mr. Bahamani. Two minutes and one minute. I don't know if you all want to combine or what. Your Honor, I just wanted to clarify a couple of things very quickly. This is Steven Maker. Basically, with regards to the bridge contract, the bridge contract is a separate contract, which was adjudicated by Judge Horne, the United States won on the merits, and the bridge contract is being held by LAM. So, in the event that this court overturns Judge Sweeney's decision, the bridge contract would still be held by LAM, and the government would then be in the process of going back to the original award to LAM in that particular instance. With regards to clarifying one other point that Mr. Ho raised, I wanted to note that Judge Sweeney did not make any findings with regard to principal purpose. Her particular analysis focused on the de minimis question. It did not focus on principal purpose, though it is correct in a different contract with different language and different provisions, Judge Horne did find the principal purpose of that particular procurement was to be a procurement. However, because the government won on the merits, the government was in no position to disagree or otherwise appeal that finding, even if we disagreed with it. If-unless the court has any questions? No. I'm hearing none. Sorry. Thank you, Your Honor. I was on mute. Can I just ask Mr. Megger to address the standing issue? Because I don't think we heard from him on that. Briefly. Very briefly, I'll have to note that the government hasn't appealed the standing question. We believe the record is unclear as to the question of who the ultimate awardee would be. That would be sufficient for HBF West to meet its burden in this case. But I do want to note that contrary to what the court has asked, and although this helps plaintiff affiliate somewhat, the record is not required to be supplemented for jurisdictional questions. The Court of Federal Claims traditionally looks at outside of the record in resolving issues of jurisdiction, injunctive relief factors, and other non-merits issues. So had we gone to the merits, it would have been a different matter. Thank you. Thank you. Mr. Bahamati, do you have a minute? If you have anything you feel needs to be said? Yes, Your Honor. Thank you. This is Shar Bahamati again on behalf of LAMDPollution, Inc. With respect to the standing issue, there's a few points that I disagree with, respectfully, with Mr. Hill Counsel on the other side. The first is, I agree with Your Honor as far as the fact that, look, the administrative record is a voice. Okay. All right. Mr. Bahamati, a minute or two? Yes. Thank you, Your Honor. This is Shar Bahamati again. Opposing counsel in his argument contended that LAM had opposed the supplementation of the record to provide more information with respect to the second and third intervening bidders. This is incorrect in my view. Rather, what LAM did was oppose supplementation of the record with respect only as to a declaration submitted by an HBF officer. I was looking at our motion for judgment on the administrative record right now, and I don't see any objection to supplementing the record with respect, again, to the second and third intervening bidders. So on that point, we have a disagreement. On another point that we have a disagreement is as to the criteria that was used to evaluate bidders. On a comparative basis, and rather... I'm sorry, Your Honor. Was there a good question? Can't hear you. Oh, I'm sorry. Is that better now? Yes. Yes. And the second point as to which we had a disagreement, that I have a disagreement with opposing counsel, is as to the criteria that was to evaluate the bids. So I'm just going to read from the bid solicitation word for word the criteria that was requested just with respect to bids. And these were, quote, name and title of sender, complete business name, complete address and telephone number, invitation for bid number, percentage of market bid, and a statement which, end quote, which basically asked for the bidder to attest to a certain thing. So with respect to the bids that were submitted and with respect to the comparative analysis as to the different bidders, other than identifying information, the only information that was requested in order to perform that comparative analysis was a percentage of market bid. The two other points that I just want to quickly touch upon, one, we didn't get a chance to get to it as part of our main argument, but even... I'm sorry. I think I really need to cut you off unless... Just give us a concluding sentence because we've really gone beyond the time here. My concluding sentence would be, even if the court was to decide against LAM when it comes to jurisdiction and when it comes to standing, I think the third basis of appeal is compelling that there was a significant amount of information and it didn't need to just be written information, but there was a significant amount of information before the sales contracting officer to decide that LAM should be awarded the contract. Thank you, Your Honor. Thank you. We thank both sides and the cases submitted. Thank you, Your Honor. Thank you. The court will pause momentarily to set up the next argument. Argument is 20-1582, Annex Foster Wheeler versus Secretary of the Interior. Ms. Pickett, whenever you're ready. May it please the court. Good morning. My name is Katie Pickett and I'm here on behalf of Appellant Annex Foster Wheeler. As the court is aware, this case involves repairs to the historic Alcatraz Citadel where the government issued a unilateral modification that greatly expanded the scope of work to include major structural repairs to the BNC cell blocks of the Citadel. Although many issues were tried before the board, Amec presents four issues on appeal, and those are the issues I'd like to address, but I'm happy to focus on any particular issue that the court wishes. The first issue